UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-242-GWU

MARK MAIN,                                                                            PLAINTIFF,

VS.                                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Main

>    Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Main

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Main

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Main

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

Main

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Main suffered from degenerative disc disease, a depressive disorder, polysubstance abuse in remission, and dependent traits. (Tr. 17). He determined that the plaintiff was restricted to a limited range of light level work based, in large part, on the restrictions cited by Dr. David Muffly (Tr. 19, 20, 23) and could, therefore, not return to his past relevant work (Tr. 20, 21, 23). Based on information supplied by a vocational expert, it appeared that there were alternative jobs which existed in significant numbers which the plaintiff could still perform. (Tr. 22, 23). Thus, the claims for benefits were denied. (Tr. 24).

The plaintiff alleged disability primarily due to musculoskeletal problems. (E.g., Tr. 86, 95). As noted previously, the ALJ based the findings concerning the plaintiff's physical function limitations[1] on the opinion of Dr. Muffly. That doctor was

---

[1] The text of the ALJ's decision cited physical restrictions such as (1) a limitation to light level exertion, (2) an inability to sit, stand or walk more than 30 minutes continuously, (3) an inability to crawl or climb, (4) an inability to squat or bend more than occasionally, (5) an inability to reach above the head more than frequently, (6) an

7

Main

a consultative examiner who saw the plaintiff in May, 2005, and performed a physical examination as well as reviewing other medical records and an MRI report. (Tr. 230-232). The doctor stated in the text of his report that the plaintiff could lift and carry at the light level of exertion, needed a position change every thirty minutes, could sit or walk four hours in an eight hour day and should avoid heights, machinery, and left leg foot pedals. (Tr. 232). In an accompanying form, the physician indicated that sitting, standing and walking could be done four hours each. (Tr. 235). Given that Muffly was the most recent examiner of record, and one who recorded detailed findings and had access to the most specialized study of the plaintiff's back, this was significant evidence to support the ALJ's choice of physical factors.

The other medical sources of record do not actively suggest greater physical restrictions. A consultative physical examiner, who saw Main in August, 2003, described range of motion studies as "good" and the plaintiff's gait as normal, and also noted that there was no physical examination evidence of nerve root damage or muscle atrophy. (Tr. 137).[2] Two medical reviewers looking at this consultative

---

inability to use the feet for repetitive movement such as operating foot controls, or (7) an inability to be exposed to unprotected heights or moving machinery. (Tr. 23). This was the same set of limitations given in interrogatories to the vocational expert, with the additional limitation added of being able to sit, stand and walk four hours each in combination for an eight hour day. (Tr. 130).

[2]The consultative examiner had no access to x-rays and indicated that "assuming that there are no gross abnormalities on plain films, then the patient does appear capable of performing a moderate amount of ambulating, standing, bending, stooping and lifting heavy objects." (Tr. 137).

Main

examination report described Main's physical condition as "less than severe." (Tr. 139, 155). Brief records from London-Corbin Medical Clinic indicate that the plaintiff was seen there on one occasion in 2004 for back and shoulder pain, but that little related physical examination data was recorded and no x-rays immediately ordered (Tr. 160); a doctor there wrote a completely cursory statement that the plaintiff "is not working at this time due to a back condition" (Tr. 161), without including any further data, identifying the condition, or suggesting that the problem would last any specific length of time. Records from Florence Urgent Care document a number of visits immediately after the plaintiff's forklift injury in October, 2001 and record findings of tenderness and muscle spasm (Tr. 163-167, 169); apparently, an MRI was contemplated (Tr. 168) and additional office visits may have taken place after October, 2001 (Tr. 162), but these were not included in Exhibit 8F. The medical director of the facility indicated that "short-term" disability papers were completed (Tr. 162), which does not address the long term disability issue under review at present. Dr. Samuel Kries saw the patient in June, 2004 and noted that Main's musculoskeletal system appeared cursorily normal (Tr. 195); a lumbar spine MRI ordered by the doctor later was interpreted to show some degress of degenerative disc disease at T12-L1, but no herniations or spinal stenosis (Tr. 218). Finally, the Baptist Regional Medical Center's Behavioral Health section, treating the plaintiff for mental health issues in November, 2004 recorded a comment from the plaintiff

Main

suggesting that the plaintiff was not in any pain. (Tr. 191). Thus, nothing definitive in the record exists to contradict Dr. Muffly.

The plaintiff also indicated that he suffered from depression, and there was evidence relating to Main's mental health status. Consultative Physical Examiner Martin Fritzhand, while not offering an opinion about Main's mental limitations, did state that the plaintiff appeared somewhat agitated during the course of his physical examination in 2003. (Tr. 137). The plaintiff was seen at the Baptist Regional Medical Center beginning in July, 2004 (Tr. 215) and then through 2004 and 2005. The plaintiff briefly seen by Dr. Kries for his mental problems, but no specific restrictions were mentioned. (Tr. 193-195). Clearly, then, there were some issues with regard to Main's mental health, but the question is what mental function limitations would be justified.[3]

The ALJ rejected the opinion voiced by Mr. James Leisenring, who conducted a consultative examination on the plaintiff in 2005. (Tr. 19). Leisenring listed an active diagnosis of malingering as well as an anxiety disorder. (Tr. 224). Because of "seemingly" legitimate issues regarding depression and anxiety, the examiner "speculated" in the text of his report that Main would be significantly compromised in reference to his ability to respond to supervision, co-workers and work pressure.

---

[3]The hypothetical question given to the vocational expert had mentioned a limitation to work involving only routine, simple, non-detailed tasks where public and coworker contact is casual and infrequent, and where supervision is nonconfrontational. (Tr. 131).

Main

(Tr. 224). On an assessment form, no opinion was expressed about the ability to make performance adjustments (Tr. 227); however, again mentioning "seemingly legitimate" issues with depression and anxiety, it was indicated that there would be no ability to deal with work stresses (Tr. 226) or to behave in an emotionally stable manner (Tr. 227) as well as numerous "seriously limited but not precluded" occupational adjustment abilities (Tr. 226).  The ALJ cited the tentative nature of the choice of the words used by Leisenring, the issue of malingering, as well as conflicting information from other sources of record, including varying accounts made by the plaintiff of his substance abuse. (Tr. 19-20).

The undersigned finds the conflicting assessment from a treating source particularly significant. When first seen at the Baptist Regional Medical Center, Main had been diagnosed with depression and assigned a GAF, current and past year, of "51-60", which is consistent with moderate symptoms only as per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed. Text Revision), p. 34.  Later that year, the same psychiatrist reiterated the diagnosis of depression, this time with polysubstance abuse (in remission), and a consistent GAF of 55 (Tr. 171); it was simultaneously noted that the plaintiff "continues to struggle with managing his current level of stress" and complained of "arguing often with others" (Tr. 171). Individual progress notes in 2004 and 2005 described the patient as "loud spoken" (Tr. 173, 175, 179, 209, 211, 212),  "irritable" (Tr. 173, 179), and with "little insight"

11

Main

(Tr. 174, 175, 179). Yet, as was noted, the plaintiff's condition was still seen in the range of moderate symptoms.

Given the fact that, as the defendant points out, one of Main's primary issues appeared to be that the opinion of his "treating" psychiatrist was not fully considered, this was a sufficient consideration of his mental status.[4]

For the reasons stated in the Commissioner's brief at pp. 11-13, the plaintiff's argument regarding the assessment of pain is rejected.

The decision will be affirmed.

This the 28th day of February, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

[4] Had this information not been available from the long-term treating source, there might have been a stronger argument for the need for an additional consultative mental health examination. As it was, the treating source information was sufficient to make a decision, and to base the mental health factors upon.